## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| RICHARD A. WELLER and<br>AMY WELLER, on behalf of themselves<br>and all others similarly situated, | Civil No. 08-2798 (JRT/SRN) |
| Plaintiffs, | **MEMORANDUM OPINION<br>AND ORDER** |
| v. | |
| ACCREDITED HOME LENDERS, INC., | |
| Defendant. | |

Richard J. Fuller and Lawrence P. Schaefer, **SCHAEFER LAW FIRM, LLC**, 220 South Sixth Street, Suite 1700, Minneapolis, MN 55402, for plaintiffs.

Alan H. Maclin and Brent R. Lindahl, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402; Kirk D. Jensen and Matthew P. Previn, **BUCKLEY KOLAR LLP**, 1250 24th Street NW, Suite 700, Washington, D.C. 20037, for defendant.

Plaintiffs Richard and Amy Weller ("the Wellers") received two non-purchase money mortgage loans from defendant Accredited Home Lenders ("Accredited"). The Wellers bring this putative class action alleging that Accredited breached the mortgage contracts, engaged in unlawful and deceptive trade practices under Minnesota law, and breached its fiduciary duties. The Wellers also bring a claim for unjust enrichment. Accredited now moves to dismiss the Wellers' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court grants that motion as set forth below.

## BACKGROUND

The Wellers own a home in Maple Ridge, Minnesota, a township in Isanti County. (Compl., Docket No. 1, ¶¶ 10, 23.)  Sometime on or before April 25, 2005, the Wellers consulted with CTX Mortgage ("CTX"), a mortgage broker, about refinancing.  (*Id.*, ¶ 23.)  The Wellers completed a loan application, and CTX submitted the application to Accredited.  (*Id.*, ¶ 25.)  Accredited agreed to provide the Wellers with financing and arranged to split this financing into two loans.  (*Id.*, ¶ 28.)  The first loan was for $480,000, with an adjustable interest rate starting at 6.99%.  (*Id.*)  The second was for $120,000, with an interest rate of 8.5%.  (*Id.*)

The loan transactions were closed with the help of Realstar Title ("Realstar"). (*Id.*, ¶ 31.)  The Wellers allege that on August 17, 2005, Accredited provided closing instructions to Realstar.  (*Id.*)  The Wellers allege that those instructions (1) identified Realstar as an agent for Accredited; (2) instructed Realstar to collect closing fees, as well as other fees owed to Accredited; and (3) prohibited Realstar from departing from the instructions.  (*Id.*)  The Wellers allege that Realstar followed these instructions, and the mortgage transactions were closed on August 18, 2005.  (*Id.*, ¶¶ 32-33.)  The Wellers allege that at no point in their negotiations did Accredited provide the Wellers with an "agency disclaimer," stating that Accredited was not acting as the Wellers' agent.  (*Id.*, ¶ 27.)

The Wellers contend that under Minnesota law, many of the fees collected by Realstar should have been characterized as interest, but were instead included in the principal of their two loans.  (*Id.*, ¶ 34.)  They contend that because they were then

charged interest on this illegally inflated principal, their "effective" rate of interest was higher than the amount agreed to in their contracts.  (*Id.*, ¶ 35.)  The Wellers also contend that they qualified for loan terms that were better than those included in their contract, but that Accredited paid CTX $7,200 for arranging a loan with less favorable terms.  (*Id.*, ¶ 37.)  The Wellers add that Accredited failed to notify them that they qualified for a lower rate of interest than the rate they were charged.  (*Id.*, ¶ 38.)  Finally, the Wellers also allege that they were not provided with written notice in advance of the closing indicating that they would be assessed settlement or closing fees.  (*Id.*, ¶ 41.)[1]

The Wellers brought this action in Minnesota state court on May 21, 2008, alleging breach of contract, breach of fiduciary duty, unjust enrichment, and a statutory claim for unlawful and deceptive trade practices.  *See* Minn. Stat. §§ 325D.44, 325F.69.  The case was later removed to federal district court and Accredited now moves to dismiss.

## ANALYSIS

### I.    STANDARD OF REVIEW

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, the non-moving party.  *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001).  A plaintiff,

---

[1] While the complaint includes additional allegations about prepayment penalties, the Wellers' have expressly stated in their brief that those provisions are not a basis for any claims.  (*See* Pl's Opp'n Memo., Docket No. 16, at 1 n.1.)

however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  In short, a plaintiff must state "a claim to relief that is plausible on its face." *Id*. at 1974.

## II.     BREACH OF CONTRACT (COUNT 1)

The Wellers first claim that Accredited's conduct constitutes a breach of contract. "The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). "Where there is a written instrument, the intent of the parties is determined from the plain language of the instrument itself." *Id*.  Minnesota's courts "have consistently stated that when a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Id*.

In their complaint, the Wellers allege that by improperly including certain fees in the principal of their loans, Accredited ultimately charged them "effective" rates of interest that were (1) greater than the rates agreed to in the mortgage contracts, and (2) greater than the lowest rate that they qualified for (i.e., the "par rate").  (Compl., ¶ 53.)  Although the Wellers do not allege that the actual interest rates they were charged exceed the rates that were prescribed in their contracts, they argue that because the principals of these loans were inflated, they will ultimately pay more total interest over the entire life of their loans.

Regardless of the propriety of the principal amounts and interest rates charged by Accredited, the Court fails to see how the Wellers' allegations could support a claim for

breach of contract.  The mortgage contracts in question not only include the precise interest rates for each loan; they also include the principal amounts.  (*See* Docket No. 6, Ex. A §§ 1, 2; Ex. B §§ 1, 2.)  While the Wellers broadly allege that these principal amounts were "inflated," they do not contend in either their complaint or their brief that Accredited has sought to collect payments that reflect greater principal amounts than those specified in the two mortgage contracts.  In other words, the Wellers do not allege that Accredited has done anything other than proceed in accordance with the express terms of the parties' written agreements.

The Wellers argue that this claim should nonetheless be allowed to proceed because the principal amounts listed in the mortgage contracts were calculated in a manner that violated state law.  The Wellers argue that Accredited was required to provide earlier notice of various fees charged in conjunction with the closings of the mortgage transactions, and that Accredited's failure to do so should have prevented them from including those fees in the loan principals.  *See* Minn. Stat. § 507.45, subd. 2.  Even assuming that the Wellers are correct about whether these fees were properly imposed, however, that merely goes to whether there were improprieties in the creation of the contracts; not to whether the actual terms of the contracts were breached.  In short, the Wellers have alleged a breach of contract claim but have not alleged a breach.  In those circumstances, the Court finds no basis for allowing the Wellers to challenge the alleged improprieties in the imposition of closing or settlement fees in the context of a claim for breach of contract.  Accordingly, the Wellers' breach of contract claim is dismissed.

### III.    MINNESOTA CONSUMER PROTECTION CLAIMS (COUNT II)

The Wellers also bring a claim for unlawful and deceptive trade practices under Minnesota Statutes sections 325F.69 (the Minnesota Consumer Fraud Act, or "CFA") and 325D.44 (the Uniform Deceptive Trade Practices Act, or "DTPA").   The Wellers allege that Accredited committed fraud under Minnesota's consumer protection laws by (1) failing to disclose that they qualified for a lower interest rate; (2) charging fees without disclosing them in advance (and thereby misrepresenting the "effective" interest rate by including impermissible charges in the loan principals); and (3) failing to provide a disclaimer indicating that they were not acting as the Wellers' agent.

Accredited argues that these claims must be dismissed because (1) any claims under the DTPA are barred under section 325D.46; (2) the Wellers have no private right of action for a claim for a damages under either the DTPA or the CFA; (3) the Wellers' claims were not pled with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure; (4) the Wellers allege misrepresentations of law, not fact, and such misrepresentations are not actionable; and (5) defendants did nothing illegal.

### A.    Minnesota Statutes Section 325D.46

Minnesota Statutes section 325D.46 states that the DTPA does not apply to "conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local government agency."  Accredited argues that this mandates dismissal of the Wellers' DTPA claims, because these claims all concern provisions that are enforced by a state agency, the Minnesota Department of Commerce.

As the Wellers point out, however, Accredited's reading of section 325D.46 has previously been rejected in this district.  In *Parkhill v. Minnesota Mutual Life Ins. Co.*, 995. F. Supp. 983 (D. Minn. 1998), the court considered whether a claim under section 325D.46 must be dismissed where the relevant conduct falls under the regulatory authority of a state agency, and that state agency has neglected to bring an enforcement action.  *Id*. at 996.  The court dismissed this reasoning, explaining that the plaintiffs had "alleged conduct which, if proven, constitutes violations of several Minnesota . . . statutes," and that the mere fact that the relevant state agencies had not brought enforcement actions "does not mean that defendant's actions are in compliance with all applicable laws."  *Id*.  In other words, the mere fact that conduct falls within the regulatory province of a state agency is not enough for a defendant to invoke section 325D.46.

Here, as part of their claim under the DTPA, the Wellers allege that Accredited failed to provide statutorily required notice of their intent to charge certain fees in connection with the Wellers' mortgage contracts.  *See* Minn. Stat. §§ 82.41, subd. 7, 507.45, subd. 2.  As in *Parkhill*, the mere fact that Minnesota has not taken action against Accredited targeting these transactions does not demonstrate that Accredited's actions are in compliance with all applicable laws.  Accordingly, section 325D.46 is not a bar to the Wellers' DTPA claims.

## B.     Minnesota's Private Attorney General Statute

Accredited argues that neither the DTPA nor the CFA permit a private cause of action for damages.  *See* Minn. Stat. § 325D.35, subd. 1 (listing the remedies available

for DTPA violations but not including damages); Minn. Stat. § 325F.70 (indicating that CFA claims are brought by the attorney general or by county attorneys).   Thus, Accredited argues, the only route for the Wellers to bring these damage claims is through Minnesota's private attorney general statute.   *See* Minn. Stat. § 8.31; *Collins v. Minn. Sch. of Bus., Inc.*, 636 N.W.2d 816, 820 (Minn. App. 2001) (noting that plaintiffs may bring claims under both the DTPA and the CFA pursuant to the private attorney general statute), *aff'd* 655 N.W.2d 320 (Minn. 2003).  In order to bring claims under this statute, however, plaintiffs must "demonstrate that their cause of action benefits the public."  *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).  Accredited argues that the Wellers have failed to adequately allege a public benefit.

In arguing that the Wellers' allegations are insufficient, Accredited relies primarily on *Rand Corp. v. Moua*, No. 07-510, 2007 WL 1576732 (D. Minn. May 30, 2007), *rev'd on other grounds*, 2009 WL 723267 (8th Cir. Mar. 20, 2009).  There, a plaintiff sought to invoke the private attorney general statute in an action alleging predatory lending practices.  The court rejected this attempt, noting that there was no evidence that the plaintiff's experiences had been duplicated.  *Id*. at *9.  The court added, however, that such a claim "could provide a public benefit if it sought to enjoin predatory lending practices that [defendant] was employing against consumers beyond [plaintiffs]."  *Id*. Here, the Wellers allege that Accredited's unlawful conduct "was not isolated or unique to Plaintiff[s], but, upon information and belief, was widespread, covering the time period of at least six (6) years prior to the filing of this Complaint, affected hundreds of customers, and was a regular and uniform business practice."  (Compl. ¶ 64.)  The

Wellers also indicate that they intend to seek certification of a class of borrowers in this case. The Court notes that the Wellers will ultimately be required to substantiate their claims about the scope of Accredited's conduct with evidence. For the purposes of a motion to dismiss, however, their allegations are sufficient to distinguish *Moua*, and provide an adequate basis for invoking the private attorney general statute.

### C.      Rule 9(b) of the Federal Rules of Civil Procedure

The Court agrees, however, that the Wellers have failed to state allegations that are sufficiently particular under Rule 9(b) of the Federal Rules of Civil Procedure. "In cases brought in federal court, Rule 9(b) applies to both common law and statutory fraud claims made under Minnesota law where the gravamen of the complaint is fraud." *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006). Here, the Welllers' DTPA and CFA claims allege a series of misrepresentations. (Compl., ¶ 60.) Accordingly, this claim is subject to Rule 9(b). *See Masterson Personnel, Inc. v. The McClatchy Co.*, No. 05-1274, 2005 WL 3132349, at *4-5 (D. Minn. Nov. 22, 2005) (concluding that claims brought under the DTPA and CFA are subject to Rule 9(b)).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Circumstances include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (internal quotation marks omitted). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges

of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (citation omitted).

Here, again, the Wellers allege that Accredited committed fraud under Minnesota's consumer protection laws by (1) failing to disclose that they qualified for a lower interest rate; (2) charging fees without disclosing them in advance (and thereby misrepresenting the "effective" interest rate by including impermissible charges in the loan principals); and (3) failing to provide a disclaimer indicating that they were not acting as the Wellers' agent. (*See* Pl.'s Opp'n Memo, Docket No. 16 at 22.)

## 1.    Interest Rate

As to first allegation, Minnesota Statutes section 58.13 provides Minnesota's requirements for disclosures of a borrower's credit qualifications. That provision states:

> No person acting as a residential mortgage originator or servicer . . . shall make, provide, or arrange for a residential mortgage loan that is of a lower investment **grade** if the borrower's credit score or, if the originator does not utilize credit scoring or if a credit score is unavailable, then comparable underwriting data, indicates that the borrower may qualify for a residential mortgage loan, available from or through the originator, that is of a higher investment **grade**, unless the borrower is informed that the borrower may qualify for a higher investment grade loan with a lower interest rate and/or lower discount points, and consents in writing to receipt of the lower investment grade loan[.]

Minn. Stat. § 58.13, subd. 1(a)(18) (emphasis added). This section goes on to explain the precise meaning of the term "investment grade."

> For purposes of this section, "investment grade" refers to a system of categorizing residential mortgage loans in which the loans are: (i) commonly referred to as "prime" or "subprime"; (ii) commonly designated by an alphabetical character with "A" being the highest investment grade; and (iii) are distinguished by interest rate or discount points or both charged to the borrower, which vary according to the degree

> of perceived risk of default based on factors such as the borrower's credit,
> including credit score and credit patterns, income and employment history,
> debt ratio, loan-to-value ratio, and prior bankruptcy or foreclosure[.]

*Id*.   In short, in order for the Wellers' claim to succeed, they must show that they qualified for a loan with a lower investment grade than the loan they received.

The Wellers' complaint, however, fails to include any allegations concerning the investment grade that the Wellers initially qualified for or the investment grade of the loans they were given.   Nor does the complaint include specific allegations about what specific representations, if any, were made about the Wellers' interest rate and its calculation; when and where any misrepresentations were made; and which specific individuals made misrepresentations.   Instead, the complaint includes vague allegations that the Wellers were given an inappropriately high interest rate without their consent. (*See* Compl., ¶¶ 38, 60.)   In those circumstances, neither the Court nor the parties are able to meaningfully assess the Wellers' position as to why section 58.13 is implicated in this case, or how Accredited's conduct in connection with the Wellers' interest rates can otherwise be characterized as fraudulent.   Thus, the Wellers' conclusory allegations are insufficient under Rule 9(b), and the Wellers' claim challenging the propriety of the interest rates on their loans is dismissed without prejudice.

The Court notes, however, that the Wellers may file an amended complaint seeking to address these factual inadequacies.   This amended complaint must be filed within thirty days of the date of this Order, and should include specific facts concerning the investment grade that the Wellers qualified for and received, as well as the specific time, place, individuals involved, and contents for any alleged misrepresentations.

### 2.      Closing Fee Disclosure

The Wellers' second claim concerns settlement and closing fees collected by Realstar.  (*See* Compl., ¶¶ 16, 17, 31, 32, 41.)  The Wellers allege that Realstar's collection of these fees violated Minnesota Statutes section 82.41, subdivision 7, and section 507.45, subdivision 2.  These provisions prohibit closing agents from charging fees for closing services unless those expenses are disclosed "at least five business days before the closing by or on behalf of the party charging for the closing services," or unless the purchaser has received an estimate satisfying the federal Real Estate Settlement Procedures Act.  Minn. Stat. § 507.45, subd. 2.  Realstar is not a named defendant in this lawsuit.  The Wellers argue, however, that Realstar's alleged failure to make the required disclosure concerning its closing fees can be attributed to Accredited because Realstar was acting as Accredited's agent.

Accredited argues that this is impossible, because the federal Truth in Lending Act ("TILA") draws a clear distinction between closing agents and lenders.  *See, e.g.*, 15 U.S.C. § 1605(a).  Accredited points to nothing in TILA or elsewhere, however, that would have **prohibited** it from employing Realstar as an agent in this, or other, mortgage transactions.  In the absence of such a prohibition, the question of whether an agency relationship existed here is simply a question of fact, hinging on the specific circumstances of the interactions and communications between Realstar and Accredited.  *See, e.g.*, *N. v. McGraw-Edison Co.*, 542 F.2d 1336, 1343 (8th Cir. 1976) ("In assessing whether an individual occupies the status of an agent, it is necessary to review the facts and circumstances surrounding that individual's activities to determine whether the

purported principal exerts the requisite control over the individual so as to create an agency relationship.").

The only allegations in the Wellers' complaint that specifically discuss the relationship between Accredited and Realstar concern closing instructions that Accredited provided to Realstar. (Compl., ¶¶ 31, 32.) In light of the Wellers' detailed assertions as to what those instructions contain, the Court finds that the actual instructions – which have now been provided by Accredited – are "necessarily embraced by the pleadings," and appropriate to consider in the context of a motion to dismiss. *See Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999).

The Wellers allege that these instructions "[i]dentified Realstar as an agent for [Accredited]." (*Id*., ¶ 31(a).) The instructions, however, contain no express statement affirming such a relationship. Indeed, one passage states that the "[c]losing Agent [Realstar] represents, warrants, and covenants that it is not an affiliate of or otherwise controlled by any party to this transaction." (Docket No. 19, Ex. G at 4.) In addition, while the instructions contain a general warning not to veer from particular procedures, it is not readily apparent from the face of these lengthy instructions how that warning – or the instructions generally – relate to the types of closing fees governed by Minnesota Statutes section 82.41, subdivision 7, and section 507.45, subdivision 2. In short, the Wellers' allegations do not cite to specific passages in Accredited's instructions that contradict the plain disclaimer quoted above, and do not otherwise make clear why the Wellers believe that Realstar was collecting **closing** fees – as opposed to other expenses not implicated by sections 82.41 or 507.45 – on Accredited's behalf. In those

circumstances, the Court concludes that the Wellers have not offered sufficient factual allegations for Accredited to comprehend and respond to the Wellers' claim that Accredited's relationship with Realstar enabled fraudulent conduct under Minnesota law. Accordingly, the Court dismisses this claim without prejudice pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

As with the Wellers' claim concerning the investment grade of their loan, however, the Wellers may file amended pleadings seeking to address these factual inadequacies. If the Wellers intend to rely on Accredited's instructions to Realstar as the basis for its contentions about agency, the amended complaint should specifically state which provisions in the instructions created that relationship. To the extent that the Wellers intend to rely on other factual circumstances to demonstrate this relationship, those allegations should be included in the amended complaint as well.

### 3.    Agency Disclaimer

Finally, as to Accredited's alleged failure to provide a disclaimer clarifying its status to the Wellers, the Court also finds that this claim – as currently pled – is insufficient to move forward. The Wellers allege that Accredited failed to send them a notice disclaiming any role as an agent for the Wellers. *See* Minn. Stat. § 58.15 (requiring such a disclaimer). At the hearing, however, the Wellers acknowledged that Accredited has provided a document addressed to the Wellers entitled "non-agency disclosure" and containing the specific disclaimer language required under Minnesota law. (*See* Docket No. 6, Ex. F); Minn. Stat. § 58.15, subd. 2. The Wellers argued that this disclosure was nonetheless deficient. This change of course in the Wellers'

argument, however, leaves their complaint without any allegations that could plausibly put Accredited on notice as to how its conduct with respect to this disclosure amounted to fraud.  As explained above, mere conclusory allegations of fraud are insufficient under Rule 9(b) of the Federal Rules of Civil Procedure, and the Wellers are required to put Accredited on notice of the specific aspects of its communications that they believe were fraudulent.  Their allegations, as pled, do not do so.  Accordingly, the Court dismisses this claim without prejudice.

As with the claims discussed above, the Wellers may seek to address these factual inadequacies in an amended complaint.  The Wellers' amended pleadings should clearly state the factual basis for its claim that any failings in Accredited's disclosure amounted to fraud.[2]

## IV.  BREACH OF FIDUCIARY DUTY (COUNT III)

The Wellers bring a separate claim alleging that because Accredited failed to send them an adequate disclaimer of its status as the Wellers' agent, as required under Minnesota Statutes section 58.15, Accredited should be characterized as the Wellers' fiduciary as a matter of law.  The Wellers argue that Accredited proceeded to breach its fiduciary duties through the conduct described above.

---

[2]  As noted above, Accredited also argues that the Wellers' claims must be dismissed because they allege misrepresentations of law, rather than misrepresentations of fact.  *See Twite v. Ameriquest Mortgage Co.*, No. 05-2210, 2006 WL 839504, at *1 (D. Minn. Mar. 29, 2006) (noting that misrepresentations of law are generally not actionable).  In light of the likelihood that the Wellers will be seeking to clarify their allegations, the Court will reserve any analysis of this issue until it is clear what the Wellers will be arguing.  The Court may consider this issue in a future motion, however, if Accredited believes that these same inadequacies appear in the Wellers' amended complaint.

Regardless of whether Accredited actually sent an adequate disclaimer, the Court finds that this claim must be dismissed.  Minnesota Statutes section 58.15 states:

> If a residential mortgage originator or exempt person other than a mortgage broker does not contract or offer to contract to act as an agent of a borrower, or accept an advance fee, it must, within three business days of accepting an application for a residential mortgage loan, provide the borrower with a written disclosure as provided in subdivision 2.

Minn. Stat. § 58.15, subd. 1.  Nothing in this statute, however, states or implies that a residential mortgage originator's failure to provide the required disclaimer is sufficient to make that party a fiduciary as a matter of law.  Moreover, the circumstances in which a residential mortgage originator **may** become a fiduciary are expressly set forth in the very next provision of Minnesota's statutes.  Minnesota Statute section 58.16, subdivision 1 states:

> Residential mortgage originators who solicit or receive an advance fee in exchange for assisting a borrower located in this state in obtaining a loan secured by a lien on residential real estate, or who offer to act as an agent of the borrower located in this state in obtaining a loan secured by a lien on residential real estate shall be considered to have created a fiduciary relationship with the borrower . . . .

The Wellers have not alleged that Accredited met any of these conditions here.

In short, the failure to make a disclosure under section 58.15 does not, on its own, make a residential mortgage originator a fiduciary as a matter of law.  The very next provision in Minnesota's statutory code expressly provides the conditions in which an agency relationship is created, and if the legislature had intended for this relationship to be triggered by a mere failure under section 58.15, it could have easily included that to the list of conditions contained in section 58.16.  It did not.  Accordingly, the Wellers' claim for a violation of Accredited's fiduciary duties is dismissed.

## V.     UNJUST ENRICHMENT (COUNT IV)

Finally, the Wellers bring a claim for unjust enrichment, arguing that Accredited inappropriately received excess interest and excessive settlement and closing costs. "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the terms 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 503 (Minn. 1981).   Accredited argues that this claim should be dismissed because (1) its receipt of any "excess" interest was not "unjust" because everything about this transaction was legal; and (2) any fees or costs paid to Realstar must be recovered from Realstar.

The Court's dismissal of each of the Wellers' claims leaves it without a basis for characterizing Accredited's enrichment as illegal or unlawful.   *Ramier*, 311 N.W.2d at 503.  Accordingly, this claim is dismissed.  The Court notes, however, that the Wellers are free to re-plead this claim if they elect to file an amended complaint alleging factually adequate claims for unlawful or deceptive trade practices.

### ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Accredited's Motion to Dismiss [Docket No. 5] is **GRANTED** as follows:

1.     The Wellers' claims for breach of contract and breach of fiduciary duty are **DISMISSED with prejudice**.

2.      The Wellers' claims for unlawful and deceptive trade practices and unjust

enrichment are **DISMISSED without prejudice**.

3.      The Wellers shall have thirty (30) days from the date of this Order to file an

amended complaint addressing the noted shortcomings in their claims alleging unlawful

trade practices and unjust enrichment.

4.      If the Wellers do not file an amended complaint within the specified time

period, their Complaint will be dismissed with prejudice.


DATED:  March 31, 2009                          _____s/ John H. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                               United States District Judge